

FILED
Nov 05, 2024
07:16 AM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Gary Dingus | ) | Docket No. 2022-02-0435 |
| | ) | |
| v. | ) | State File No. 80634-2021 |
| | ) | |
| Grand Piano and Furniture Company, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | Heard October 1, 2024 |
| Compensation Claims | ) | in Knoxville, TN |
| Brian K. Addington, Judge | ) | |

---

### Affirmed and Certified as Final

In this appeal, the employer contended the employee's willful failure to use a safety device served to bar to his workers' compensation claim. The employee worked as a picker and lift operator for the employer. Employees in such positions were required to utilize a tether system that connected to the lift and attached to a body harness to prevent falls. While the employee was on the lift and attempting to maneuver a sofa onto a high inventory shelf, he fell approximately 20 feet to the floor, injuring his back and left leg. The employee contended that his harness was attached to the tether when he elevated the lift and attempted to place the sofa on the shelf. Conversely, the employer asserted the employee either willfully failed to properly attach the safety harness or willfully detached the safety harness before the fall, resulting in his injuries. Following a compensation hearing, the trial court determined that the employer had failed to show by a preponderance of the evidence that the employee had willfully violated the employer's safety rules. The court concluded the employee had sustained a compensable injury and awarded benefits, and the employer has appealed. After a careful review of the record and hearing the arguments of the parties, we affirm the trial court's order and certify it as final.

Judge Pele I. Godkin delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Meredith B. Weaver joined.

G. Gerard Jabaley, Knoxville, Tennessee, for the employer-appellant, Grand Piano and Furniture Company

Michael Munsey and Jackie Munsey, Abingdon, Virginia, for the employee-appellee, Gary Dingus

**Factual and Procedural Background**

Gary Dingus ("Employee") worked as a picker and certified forklift operator for Grand Piano and Furniture Company ("Employer"). His work duties included stocking and pulling furniture from shelves in an inventory warehouse, and, in order to reach certain items on high shelves, he utilized a lift. Employer required all employees working on a lift to use a tether system to prevent falls. The tether system was attached to a body harness by a carabiner, and the carabiner was hooked to a metal D-ring on the back of the harness.

Employee testified that shortly after he began working for Employer in July 2021, in an incident unrelated to the current claim, his tether "snapped and came off" as he was exiting the lift. Employee asserted he reported the incident to Employer and explained that "you think you're hooked, but you're not." Thereafter, Employee completed Employer's forklift operator safety training in October and signed a safety harness policy, affirming he was aware of Employer's requirement to wear the harness and ensure it is attached to the tether and, further, that failure to wear the safety harness and tether would result in a written reprimand.[1]

On October 16, 2021, Employee was attempting to maneuver a sofa from the lift platform onto a high shelf when he suddenly "flipped off" and fell approximately 20 feet to the ground, injuring his back and left leg. Employee stated that his harness was still attached to the tether when he elevated the lift and attempted to maneuver the sofa. Employee contends that he knew it was attached because the tether followed behind him as he worked and there was tension on the tether indicating it was still hooked to his harness. After he fell, two co-workers and the assistant warehouse manager, Randy Finks, came to assist him before an ambulance arrived.[2] Employee stated that while lying on the ground, he saw the warehouse manager climb the shelves and lower the lift.

A compensation hearing was held on May 22, 2024. During the hearing, Employee testified that he was never disciplined by Employer for any alleged failure to wear/use safety equipment or for any other reason. He stated he had watched a video on safety and taken a written test one week before the accident. Employee further testified that, before the accident, he knew his harness was attached because it did not come off when he gave it a "jerk" and thought he heard "metal," which would indicate the harness was attached to the D-ring on the back of his harness. Employee testified that the connection between the harness and the tether was a "blind" connection because an employee could not see whether the connection was made due to the placement of the D-ring on the back of the harness. Employee theorized that he may have mistakenly attached the tether to the ring on his

---

[1] The policy also noted that two violations within 12 months would result in termination. A certificate showing Employee's completion of this training was issued on October 18.

[2] Medical treatment, including medical bills, work restrictions, and the permanent impairment rating are not at issue for purposes of this appeal.

harness and not the D-ring itself, but he maintained that he never intended to be on the lift without his harness securely attached.

Employer argued that Employee's claim should be denied pursuant to Tennessee Code Annotated section 50-6-110(a)(4) because the fall could not have occurred but for Employee's failure to use the required safety equipment. In support of this contention at the compensation hearing, Employer relied on the testimony of David Nottingham, the warehouse manager; Randy Fink, the assistant warehouse manager; and Leslie Salyers, Employer's safety director.

Mr. Nottingham testified that he personally trained Employee and had never observed Employee fail to be properly tethered to the metal D-ring while working on the lift. During the trial, Mr. Nottingham was shown a photograph, taken after the accident, of the lift with a box extended beyond the end of the platform. He testified that there was a footprint on the end of the box Employee was moving at the time of the accident and that this footprint, presumably made by Employee, could not have been made unless Employee had disconnected his harness from the tether. However, Mr. Nottingham admitted that he did not witness the accident and did not observe Employee step on the box, and his opinion was based solely on a photograph taken after the accident. Mr. Nottingham did not know when the photograph was taken or who had taken the photograph, and he confirmed that the lift had been moved from its original location after the accident.

Mr. Fink testified that he never saw Employee fail to use his safety equipment on any prior occasion. However, he also testified that when he approached Employee after the fall and asked whether Employee had been "harnessed up" before the fall, Employee responded, "no, I f'd up, I f'd up."

Finally, Employer's Safety Director, Leslie Salyers, provided testimony regarding Employer's investigation of the harness, tether, and lift after the accident. Mr. Salyers testified that no defects were found to the harness or the ring and that no stress fractures were found on the carabiner, the latch, or the strap on the harness. With respect to the issue of rule enforcement, Mr. Salyers testified that he was unaware of any instance where there was a safety violation known by management and discipline was not administered.

At the conclusion of the hearing, the trial court determined that the preponderance of the evidence did not support Employer's affirmative defense. The court noted Employee "credibly testified" that, before the accident, he attempted to attach the tether to the harness and thought it was attached because the harness followed behind him as it was designed to do. Further, the court found that Employee did not "willfully ignore[] his obligation to tether [himself to] the forklift" and that, even if he failed to properly tether himself, he presented a valid excuse because he believed he was "tethered to the forklift, just not tightly enough to prevent the fall." Finally, the court noted that Employee never admitted to removing his safety device, and Employer provided no evidence that Employee detached

3

the safety harness before the fall or that anyone saw Employee untethered while operating the lift. As a result, the court rejected Employer's affirmative defense and concluded Employee had shown his injuries arose primarily out of and in the course and scope of his employment.

In its order, the court identified Dr. Selma Kominek and Dr. Larry Waldrop as Employee's authorized treating physicians, ordered Employer to pay past reasonable and necessary medical expenses that are causally related to the work incident pursuant to the medical fee schedule, and ordered payment of $43,553.55 in a lump sum for temporary total disability benefits from October 17, 2021, through September 15, 2023.[3] The court also awarded Employee an "original award" of permanent partial disability benefits in the amount of $29,525.17. Employer has appealed.

**Standard of Review**

The standard we apply in reviewing the trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2023). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2023).

**Analysis**

In its notice of appeal, Employer asserts the trial court erred in determining that Employee sustained a compensable injury because "relevant evidence was ignored, overlooked, and/or incorrectly weighed" and because the evidence showed there was a willful failure to use a safety device. Conversely, in its brief on appeal, Employee asserts the trial court was correct in concluding there was no willful violation. In the alternative, Employee asserts he presented a valid excuse for a "theoretical violation of the safety rule."

---

[3] Dr. Kominek testified that Employee was unable to work from the date of his injury until the present date; however, Employee was placed at maximum medical improvement on September 15, 2023. Therefore, temporary benefits ended at the date of maximum medical improvement pursuant to Tennessee Code Annotated section 50-6-234(b).

Tennessee Code Annotated section 50-6-110 identifies certain types of work injuries that are not covered by the Workers' Compensation Law. Relevant to this case, these include injuries caused by "[t]he employee's willful misconduct" and those caused by "[t]he employee's willful failure or refusal to use a safety device." Tenn. Code Ann. § 50-6-110(a)(1) & (a)(4). Moreover, this statute provides that "[i]f the employer defends on the ground that the injury arose in any or all of the ways stated in subsection (a), the burden of proof shall be on the employer to establish the defense." Tenn. Code Ann. § 50-6-110(b). Hence, in the present case, Employer had the burden of proving by a preponderance of the evidence that Employee's injury arose from his willful failure or refusal to use a safety device or, more generally, from his willful misconduct.

In *Mitchell v. Fayetteville Public Utilities*, 368 S.W.3d 442 (Tenn. 2012), the Tennessee Supreme Court adopted a four-step analysis for evaluating an employer's statutory defenses of willful misconduct and/or willful failure or refusal to use a safety appliance. For an employer to prevail on these affirmative defenses, the employer must establish the following: (1) the employee's actual, as opposed to constructive, notice of the rule; (2) the employee's understanding of the danger involved in violating the rule; (3) the employer's bona fide enforcement of the rule; and (4) the employee's lack of a valid excuse for violating the rule. *Mitchell*, 368 S.W.3d at 453; *see also Glasgow v. 31-W Insulation Co., Inc.*, No. 2017-05-0225, 2017 TN Wrk. Comp. App. Bd. LEXIS 51, at *13 (Tenn. Workers' Comp. App. Bd. Sept. 6, 2017).

Here, for purposes of this appeal, it is undisputed that three of the four prongs of this test have been met: Employee was aware of Employer's safety rule regarding the use of the tether system while working on the lift; Employee understood the dangers in violating the rule; and Employer routinely enforced the rule. This case hinges on the fourth prong, which requires evidence that the employee offered no valid excuse for violating the rule. With respect to this fourth prong, Employer takes the position that an employee's failure to offer a valid excuse for violating a safety rule establishes the element of willfulness. We have previously addressed and rejected this interpretation.

In *Roper v. Allegis Group*, No. 2016-01-0546, 2017 TN Wrk. Comp. App. Bd. LEXIS 14 (Tenn. Workers' Comp. App. Bd. Feb. 10, 2017), the employee's arm was caught and pulled into a machine while he was attempting to maneuver past it on a narrow walkway. *Id.* at *3. In rejecting the employer's willful misconduct defense in that case, we first noted: "[I]t is axiomatic that to succeed with this defense, the employer must also establish that there was, in fact, a violation of a safety rule." *Id.* at *7. With respect to the employer's argument regarding the fourth prong of the *Mitchell* test, we concluded that the mere fact that an injury occurred was insufficient to establish the affirmative defense. In addressing this argument, we stated as follows:

> This is an overbroad interpretation of *Mitchell* that, if accepted, would allow employers to deny benefits to employees whose merely negligent or reckless

actions resulted in a violation of a known safety rule. On the contrary, the *Mitchell* Court stated just the opposite. In evaluating Mr. Mitchell's violation of the pertinent safety rule in that case, the Supreme Court concluded, "his acknowledgment that he elected to take off [the protective gloves] anyway clearly established that his act was willful – and not merely negligent or reckless." Thus, the Supreme Court in *Mitchell* reinforced longstanding precedent that an employee's negligent or reckless actions generally are not enough to defeat a claim for workers' compensation benefits.

*Id.* at *11 (internal citation omitted).

In *Oglesby v. United Parcel Service, Inc.*, No. 2017-08-1148, 2018 TN Wrk. Comp. App. Bd. LEXIS 34 (Tenn. Workers' Comp. App. Bd. July 19, 2018), the employee worked as a maintenance mechanic. *Id.* at *1. While working on a conveyor belt system, the employee's arm became caught and pulled into the machine, resulting in significant injuries. *Id.* at *3. The employer denied the claim based on the employee's alleged failure to follow its "lock out/tag out" procedure. *Id.* at *4. In affirming the trial court's determination that Employer was unlikely to prevail on its affirmative defense at trial, we noted:

[A]n employee's negligent conduct is not a defense to a claim for workers' compensation benefits[,] and to succeed on this defense, *the employer must establish that the employee willfully violated a known safety rule . . . .* Without such evidence of willfulness, we conclude the preponderance of the evidence supports the trial court's determination that Employer is not likely to prevail at trial in establishing its willful misconduct defense and that Employee is likely to prevail in establishing the compensability of his claim.

*Id.* at *13 (emphasis added).

Here, Employer's defense is based on the theory that the accident could not have occurred but for Employee's failure to use the safety harness. What is missing from Employer's case, however, is sufficient evidence that Employee *willfully* violated this safety rule.[4] In response to Employee's testimony that he believed he had properly tethered himself before the accident and did not detach himself or otherwise remove his harness at any time prior to the fall, Employer relied on a photograph of a footprint it contended belonged to Employee that was beyond the reach of the tether. This circumstantial evidence was intended to prove that Employee *must have* detached himself from the tether

---

[4] As noted above, Tennessee Code Annotated section 50-6-110(b) places the burden on the *employer* to establish every element of this defense. In addition to our conclusions as stated in *Roper* and *Oglesby*, we further note that accepting Employer's interpretation of the fourth prong of the *Mitchell* test would, in effect, improperly shift the burden of proof to Employee to establish a valid excuse for violating a known safety rule to avoid an automatic finding of willfulness.

6

and *must have* stepped on the box as he attempted to maneuver it from the lift onto the shelf. Yet, Employer presented no evidence as to when, how, or under what circumstances this footprint was made, or even that the footprint belonged to Employee.[5] Further, Employer's evidence showing a lack of defects in the equipment merely proves that the equipment was not defective; it was not probative of the issue of willfulness. An employee's negligence in using non-defective equipment is just that—negligence; it does not prove willfulness, and it is not a defense to a claim for workers' compensation benefits. Simply put, we conclude the record contains insufficient evidence to support a finding that Employee *willfully* violated Employer's safety rule. Thus, we agree with the trial court's determination that Employer failed to prove its affirmative defense by a preponderance of the evidence.

## Conclusion

For the reasons stated above, we affirm the trial court's order and certify it as final. Costs on appeal are taxed to Employer.

---

[5] We further conclude that Mr. Fink's testimony regarding Employee's statements after the fall do not establish, by a preponderance of the evidence, that Employee willfully violated Employer's safety rule. Employee's utterances indicating that he "f'd up" also support a finding that Employee's conduct amounted to, at most, negligence or recklessness.

7



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Gary Dingus | ) Docket No. 2022-02-0435 |
| | ) |
| v. | ) State File No. 80634-2021 |
| | ) |
| Grand Piano and Furniture Company, et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) Heard October 1, 2024 |
| Compensation Claims | ) in Knoxville, TN |
| Brian K. Addington, Judge | ) |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 5th day of November, 2024.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| G. Gerard Jabaley | | | | X | gjabaley@wimberlylawson.com<br>aburge@wimberlylawson.com |
| Michael Munsey | | | | X | mike@munseyinjurylaw.com<br>jackie@munseyinjurylaw.com |
| Brian K. Addington, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |



Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov